IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

Case Number 8:23cr231

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) | **Brief in support of motion to** |
| | ) | **suppress and request for** |
| v. | ) | **hearing; and Brief in support** |
| | ) | **of Motion for a hearing under** |
| Byron G. Morales, | ) | ***Franks v. Delaware,*** **438 U.S.** |
| Defendant. | | **154 (1978)** |

Byron Morales has moved to suppress evidence and statements on five

grounds. Here's why.

> **I.    The warrantless search of his Facebook account by Facebook (a government agent), the National Center for Missing and Exploited Children (a government entity), and law enforcement (the government) violated Byron Morales's Fourth Amendment rights.**

Defendant Byron Morales has moved to suppress all evidence seized

attendant to the warrantless searches of files seized from his private Facebook

account, *i.e.,* his papers and effects, by a government agent, a government entity,

and ultimately the government itself through the CyberTip process.

On October 20, 2020, Facebook, Inc., acting as a government agent, sent four

files to the National Center for Missing and Exploited Children ("NCMEC"), a

government entity, in CyberTipline Report # 81643543. By reviewing and

forwarding these files, Facebook violated Mr. Morales's Fourth Amendment rights

under both a reasonable-expectation-of-privacy and a trespass-to-chattels theory of

the amendment.

NCMEC – a government entity under 18 U.S.C. § 2258A – conducted its own analysis of the files and then forwarded them to law enforcement. This warrantless search *also* violated Mr. Morales's Fourth Amendment rights under both a reasonable-expectation-of-privacy and a trespass-to-chattels theory of the amendment.

It remains unclear whether law enforcement reviewed the files before seeking a warrant. If it did, such a warrantless search violated Mr. Morales's Fourth Amendment rights under both a reasonable-expectation-of-privacy and a trespass-to-chattels theory of the amendment.

## A.    Facebook acted as an agent of the government.

Section 2258A of Title 18, U.S. Code, imposes a duty upon "whoever, while engaged in providing an electronic communication service or a remote computing service to the public through a facility or means of interstate or foreign commerce" to "provide to the CyberTipline of the National Center for Missing and Exploited Children" a report should the provider obtain actual knowledge of apparent violations of 18 U.S.C. §§ 1466A, 2251, 2251A, 2252, 2252A, 2252B, or 2260.

"[S]ince time out of mind the law has prevented agents from exercising powers their principals do not possess and cannot delegate." *United States v. Ackerman*, 831 F.3d 1292, 1300 (10th Cir. 2016)(*citing* 1 William Blackstone, Commentaries *417-20 and Restatement (Second) of Agency § 17 (1958)). Facebook, by reporting its findings to the government, aimed to help the government and to

fulfill the legal duty imposed on internet service providers (ISP)[1] by 18 U.S.C. §

2258A. "ISPs who fail to comply with this obligation face substantial (and

apparently criminal) penalties payable to the federal government." *Ackerman*, 831

F.3d at 1296 (citing 18 U.S.C. § 2258A(a)(1)).

Nonetheless, the Eighth Circuit has held searches by electronic-service

providers (ESPs)[2] are private. *United States v. Ringland,* 966 F.3d 731, 737 (8th

Cir. 2020), *petition for rehearing and rehearing* en banc *denied*, Oct. 6, 2020, *cert.*

*denied*, 141 S.Ct. 2797 (June 21, 2021).

### B.  NCMEC is a government entity.

In *Ringland,* the Eighth Circuit expressly declined to address whether

NCMEC is a government agency/entity. *See* 966 F.3d at 737.

The Fourth Amendment applies only to state action. *United States v.*

*Jacobsen*, 466 U.S. 109, 113 (1984). The "calling card of a governmental entity is

whether it is 'invested with any portion of political power, partaking in any degree

in the administration of civil government, and performing duties which flow from

sovereign authority.'" *Ackerman*, 831 F.3d at 1295 (*quoting Trustees of Dartmouth*

*College v. Woodward*, 17 U.S. (4 Wheat.) 518, 668-69, 4 L.Ed. 629 (1819)).

The National Center for Missing and Exploited Children enjoys law-

enforcement powers beyond those enjoyed by private citizens. Two statutes – 18

U.S.C. § 2258A and 34 U.S.C. § 11293(b) – "mandate its collaboration with federal

---

1 The caselaw seems to use "internet service provider (ISP)" and "electronic service
provider (ESP)" interchangeably. *Ackerman* uses ISP; *Ringland, supra*, uses ESP.
2 *See* n.1, *infra*.

(as well as state and local) law enforcement in over a dozen different ways, many of which involve duties and powers conferred on and enjoyed by NCMEC but no other private person." *Ackerman*, 831 F.3d at 1296. "NCMEC and NCMEC alone is statutorily obligated to maintain an electronic tipline for ISPs to report possible child sexual exploitation to the government." *Id.* Moreover, ISPs are required to report contraband to NCMEC, who, in turn, requires the ISP to preserve the evidence. *See Ackerman*, 831 F.3d at 1297. Unlike private entities, NCMEC is allowed to receive contraband.  *Id.*

Even though the Eighth Circuit has declined to answer this question, the Tenth Circuit's opinion in *Ackerman* points out that, where NCMEC – a government entity – engages in a search that is more expansive than the one engaged in by the ISP, a Fourth Amendment search by a government entity – as opposed to a private entity – has occurred. *See* 831 F.3d at 1306.

### C.    A search occurred.

An email (or, in this case, a Facebook Messenger message) is a paper or effect for the purposes of the Fourth Amendment. *See, e.g., Ackerman*, 831 F3d at 1304 ("No one in this appeal [including the United States or amici curiae, NCMEC and Google, Inc.] disputes that an email is a 'paper' or 'effect' for Fourth Amendment purposes.") Mr. Morales had a reasonable expectation of privacy in his Facebook account and the private messages he sent from it. The warrantless review of the contents of his messages by Facebook and NCMEC infringed upon Mr. Morales's reasonable expectation of privacy.

That said, the "reasonable expectation of privacy" formulation is not the only way a Fourth Amendment search can occur. A search can occur "*either* when it infringes upon a reasonable expectation of privacy *or* when it involves a physical intrusion (a trespass) on a constitutionally protected space or thing ("persons, houses, papers, and effects") for the purpose of obtaining information." *Ackerman*, 831 F.3d at 1307 (*citing United States v. Jones*, 132 S.Ct. 945 (2012) (emphasis in original)). The warrantless opening and examination of files that could have contained much besides contraband "seems pretty clearly to qualify as exactly the type of trespass to chattels that the framers sought to prevent when they adopted the Fourth Amendment." *Ackerman*, 831 at 1307-08 (*citing, e.g.*, 1 Thomas M. Cooley, The General Principles of Constitutional Law in the United States of America 212 & n. 2 (1880); Thomas M. Cooley, A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union 306 n.2 (1868); and *Ex Parte Jackson*, 96 U.S. 727, 733 (1877)).

> **D.    Warrantless searches of private messages by government agents and government entities are violations of the Fourth Amendment.**

Because Facebook, NCMEC, and law enforcement – acting in concert pursuant to statutory scheme for the government's benefit – conducted warrantless and unreasonable seizures and searches of Byron Morales's papers and effects, each entity (together and separately) violated Mr. Morales's right to be free from unreasonable searches and seizures. No cognizable exception to the warrant requirement exists here. Suppression of the evidence obtained illegally as a result of

the warrantless searches by Facebook, NCMEC, and the law enforcement is the

proper remedy.

    **II.    The March 16, 2021 search-warrant application was facially insufficient to support probable cause.**

    Mr. Morales also challenges the validity of a search warrant based upon a

facially insufficient application dated March 16, 2021. He moves to suppress any

evidence discovered attendant to the execution of this warrant.

    "If a warrant lacks probable cause and the executing officer was objectively

reasonable in relying on the warrant, the good-faith exception to the exclusionary

rule applies and evidence should not be suppressed due to an absence of probable

cause." *United States v. Augard*, 954 F.3d 1090, 1093 (8th Cir. 2020) (citing *United

States v. Leon*, 468 U.S. 897, 922–23 (1984)).

> An officer's reliance is only unreasonable if: (1) the affidavit supporting the warrant contains knowing or reckless false statements misleading the judge; (2) the issuing judge wholly abandons its judicial role in issuing the warrant; (3) the affidavit is so lacking in indicia of probable cause that reliance is entirely unreasonable; or (4) the warrant is so facially deficient that no reasonable officer could consider it valid. *United States v. Proell*, 485 F.3d 427, 431 (8th Cir. 2007). The good- faith exception may apply based on information reasonably known to the executing officer but not included in the warrant. *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015).

*Augard*, 954 F.3d at 1093-94.

    Officer Stephan Sklaar sought, on March 16, 2021, a search warrant from the

Douglas County (NE) Court. This March 16, 2021 warrant application sought to

search the contents of the four files forwarded by Facebook to NCMEC to law

enforcement through CyberTipline Report #81643543. Despite the fact that the

warrant application sought to open and search *four* files, the application averred

that only *one* of the files had (maybe) matched a hash value. The application

contained no information about the other three files. The application – hoping to

provide the court with probable cause to search these files – stated that "[i]t is

*assumed* rather, Facebook relied on the hash value match to identify the Child

Sexual Exploitation Material." (emphasis added.) The application did not define

"Child Sexual Exploitation Material" (*i.e.,* to confirm whether this definition is the

same, greater, or smaller than 18 U.S.C. § 2256's definition of "child pornography")

or explain the process, parameters of, or methodology of Facebook's hash-value

search. The application did not describe the "known" image – *i.e.,* the image

retained in the databases of Facebook, NCMEC, and/or law enforcement – to which

(one of) the files had matched or state that the known file was confirmed child

pornography.

This application wholly failed to establish probable cause to believe that

these four files were contraband. The file did not even establish probable cause to

believe that *one* of these files were contraband. The county court nonetheless

granted this application and all four files from CyberTipline Report #81643543 were

reviewed by law enforcement (perhaps for the second time).[3] The third and fourth

---

3 The application cryptically declined to "describe in this affidavit the result of the NCMEC and [law enforcement] review of the images[,]" its author adding that he "ask[s] the court to draw no inferences from the fact that [NCMEC and/or law enforcement] opened and viewed the electronic mail message and the attachment(s)." (cryptic bracketing in the original.)

*Augard* scenarios are implicated here: the affidavit was so lacking in indicia of

probable cause that the officers were entirely unreasonable to rely upon it and it

was so facially deficient that no reasonable officer could consider it valid. *See*

*Augard*, 954 F.3d at 1093-94.

> **III.    The March 16, 2021 and March 31, 2021 search-warrant**
> **applications contained factual omissions and/or misstatements.**
> **A hearing under *Franks v. Delaware,* 438 U.S. 154 (1978), is**
> **warranted.**

The first *Augard* scenario is also implicated and, as such, a hearing under

*Franks v. Delaware,* 438 U.S. 154 (1978) is warranted.[4]  Material omissions made

within the March 16, 2021 application and another application dated March 31,

2021 contributed to the decisions to issue these warrants. Had the omitted

information been included within the applications, the warrants would not have

been granted.

The March 16, 2021 application implied that Facebook's hash-value search –

the inciting event – was for files "that Facebook has determined constitute child

pornography." "When Facebook detects a file passing through its servers with the

same hash value of a file from its database of known child pornography," the

application states, Facebook submits a CyberTip to NCMEC. In this case, of course,

Facebook *had* submitted a CyberTip (#81643543) to NCMEC, thus implying that at

least one of the files had a hash value matching known child pornography. The

application omitted, however, that, after receiving the files and comparing their

---

4 "*Warrant*-ed" pun intended.

hash values to known files, NCMEC classified the event as

"Anime/Drawing/Virtual." The application did not mention that at least two of the

files had been sent by Facebook to NCMEC *merely* because the images were sent

"three messages before" or "immediately before" "child exploitation imagery." The

application did not mention that the third image was a user-profile picture –

obviously not contraband at all. The application did not explain that this CyberTip

was based upon the discovery of "child exploitation imagery," did not attempt to

define "child exploitation imagery," and did not attempt to reconcile this term with

18 U.S.C. § 2256's definition of "child pornography."

The second search-warrant application – which sought production of the

entirety of Mr. Morales' Facebook profile – was based upon the results of the first

warrant, *i.e.,* the review of files in CyberTip #81643543. That second warrant

application indicated that CyberTipline Report #81643543 reported that Facebook

had "flagged an account on their service for uploading apparent child pornography."

The second warrant application stated that CyberTipline Report #81643543 "sent

three files believed to contain child exploitation material…." In fact, CyberTipline

Report #81643543 had linked just one file to "child exploitation imagery" (a term

still undefined) and NCMEC classified the event as "Anime/Drawing/Virtual," not

apparent child pornography. The other two images were included only because of

their proximity to the other message. Because of these statements, the county court

issued a warrant that granted law enforcement unrestricted access to Mr. Morales's

personal Facebook account.

Had the warrant included this information, the warrant would not have issued.

IV.    **The poisonous tree yielded many fruits.**

Under *Wong Sun v. United States,* 371 U.S. 471 (1963), Mr. Morales has moved to suppress: (1) the search of the CyberTip files by NCMEC and law enforcement after Facebook unlawfully searched them; (2) the review of CyberTip files attendant to the first warrant; (3) the return of a *second* warrant based upon the initial search by Facebook, the reviews by NCMEC and law enforcement; or the review of the CyberTip files from the first warrant; (4) the contents of a July 7, 2023 interview with Mr. Morales (which would not have occurred but for these unlawful searches); and (5) the contents of Mr. Morales's cell phone (which would not have been obtained by law enforcement had these illegal searches yielded the interview.)

Specifically, the inclusion of facts gleaned from illegal searches tainted the March 16, 2021 and March 31, 2021 warrants. The police used ill-gotten gain in their applications for these search warrants. These search warrants are tainted and the fruits of such further search must be suppressed. *See, e.g., United States v. Tilton*, 127 F.3d 663, 668 (8th Cir. 1997).

V.    **Byron Morales made incriminating statements involuntarily and did not provide valid consent for law enforcement to seize and search his cell phone.**

Mr. Morales has moved to suppress his July 7, 2023 statements, which were provided involuntarily, and the evidence seized from him on July 7, 2023, including his black Samsung phone, which was seized from him without probable cause, a

warrant, or his consent.

On July 7, 2023, armed with the information from the search-warrant

returns, two FBI agents interviewed Mr. Morales at his place of employment. Mr.

Morales – whose native language is not English – made incriminatory statements to

law enforcement regarding his involvement in the offenses charged in the

Indictment. These statements were not made voluntarily and violated Mr. Morales's

Fifth Amendment rights against self-incrimination. During this conversation, he

gave the agents his black Samsung Galaxy cell phone, which was later searched by

the FBI without a warrant and which yielded incriminatory evidence. Any consent

to seize and then search this phone was invalid. The warrantless seizure and search

of this phone violated Mr. Morales's Fourth Amendment rights.

Byron Morales's July 7, 2023 statements were given involuntarily. The Fifth

Amendment and fundamental due process ensure that involuntary confessions

cannot be used against an accused. The Supreme Court in *Jackson v. Denno*, 378

U.S. 368, 370-371 (1964) held:

> It is now axiomatic that a defendant in a criminal case is deprived of
> due process of law if his conviction is founded, in whole or in part, upon
> an involuntary confession, without regard for the truth or falsity of the
> confession…. Equally clear is the defendant's constitutional right at
> some stage in the proceedings to object to the use of the confession and
> to have a fair hearing and a reliable determination on the issue of
> voluntariness, a determination uninfluenced by the truth or falsity of
> the confession.

"A statement is involuntary when it is extracted by threats, violence, or express or

implied promises sufficient to overbear the defendant's will and critically impair his

capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 724 (8th

Cir. 2004) (*quoting Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001)).

Courts should use a totality-of-the-circumstances test, looking to both the "conduct

of the officers and the characteristics of the accused." *Id.*

This sentiment is codified at 18 U.S.C. § 3501(a), which provides for a

hearing to determine the voluntariness of any such confession out of the presence of

the jury.   Section 3501 demands the consideration of "all the circumstances

surrounding the giving of a confession," including:

> (1) the time elapsing between arrest and arraignment of the defendant
> making the confession, if it was made after arrest and before
> arraignment, (2) whether such defendant knew the nature of the
> offense with which he was charged or of which he was suspected at the
> time of making the confession, (3) whether or not such defendant was
> advised or knew that he was not required to make any statement and
> that any such statement could be used against him, (4) whether or not
> such defendant had been advised prior to questioning of his right to
> the assistance of counsel; and (5) whether or not such defendant was
> without the assistance of counsel when questioned and when giving
> such confession.
>
> The presence or absence of any of the above-mentioned factors to be
> taken into consideration by the judge need not be conclusive on the
> issue of voluntariness of the confession.

18 U.S.C. § 3501(b).

A language barrier, coupled with the agents' presence at Mr. Morales's job,

rendered the contents of this interview involuntary. "The government bears the

burden of persuasion and must prove by a preponderance of the evidence that the

challenged statements were voluntary." *Lebrun*, 363 F.3d at 724 (*citing United

States v. Astello*, 241 F.3d 965, 966 (8th Cir. 2001)).

Similarly, the alleged consent to seize and search Morales's cell phone,

requested in English, fails to meet the requirements of *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973) and *United States v. Chaidez*, 906 F.2d 377 (8th Cir. 1990). In *Bustamonte*, the Supreme Court declared that consent, to be valid, must be deemed voluntary under the totality of the circumstances. 412 U.S. at 235. In *Chaidez*, the Eighth Circuit laid out 11 factors to be considered in this "totality of the circumstances" analysis. 906 F.3d at 380-81. These factors are: (1) age, (2) general intelligence and education, (3) intoxication, (4) whether the defendant was informed of the right to withhold consent, (5) experience with the law, (6) length of detention, (7) threats, intimidation, or punishment, (8) reliance upon any law enforcement promises or misrepresentation, (9) whether the defendant was in custody, (10) whether the defendant was in a public or secluded place, and (11) objected to the search or stood by silently. 906 F.2d at 381; *see also United States v. Jones*, 254 F.3d 692, 696 (8th Cir. 2001). Here, Mr. Morales did not speak English as his primary language. He was not informed of his right to withhold consent. He had no experience with the law, particularly in the United States. He was at his place of employment and had no place in which to retreat.

The language barrier particularly compounded this radical power imbalance. In *United States v. Guerrero*, 374 F.3d 584 (8th Cir. 2004), Guerrero and the state trooper tried to communicate some: "Guerrero spoke in Spanish, in extremely broken English, or would repeat verbatim what [the state trooper] had asked him." *Id.* at 586. The defendant told the officer that he spoke only "a little" English and answered certain questions incorrectly. When the trooper asked

Guerrero if he could search the vehicle, "Guerrero said several inaudible words in Spanish and English before responding, 'Yeah.' When [the trooper] asked a second time if he could search the vehicle, Guerrero responded, 'Okay. Si.'" *Id.* at 587.

The Eighth Circuit in *Guerrero* noted that "'the Fourth Amendment requires only that the police reasonably believe the search to be consensual.'" *Id.* (*quoting United States v. Sanchez*, 156 F.3d 875, 878 (8th Cir. 1998). The Court held that "it is clear that a reasonable officer would have been aware that Guerrero was having difficulty understanding the questions" and concluded that the district court did not commit clear error in finding that a reasonable officer would not believe that Guerrero had knowingly and voluntarily consented to the search of his car. *Id.* at 589.

In *United States v. Cedano-Medina*, 366 F.3d 682 (8th Cir. 2004), the Court of Appeals upheld a district court's decision that a state trooper reasonably believed that a man speaking broken English had consented to a search of his truck. *But* the Court noted that the communication barrier and the failure to use an available form "might give us pause if we were considering the matter as an original proposition." *Id.* at 687.

The government bears the burden of proving consent.

## Conclusion

These unreasonable searches and seizures by government agents and entities and the fruits of these searches and seizures – including the CyberTip files, the contents of Byron Morales's Facebook account, the contents of his Samsung Galaxy

cell phone, and his statements to law enforcement on July 7, 2023 – violated his Fourth Amendment rights under the United States Constitution. His statements were not made voluntarily in violation of the Fifth Amendment. His phone was seized and searched without valid consent or a warrant. All of this evidence must be suppressed.

Defendant Byron Morales requests an evidentiary hearing and oral argument on this motion. He puts the government to its burden of proving compliance with the Fourth and Fifth Amendments. I have appended to this brief exhibits in support of his *Franks* request, to include: the search-warrant applications, the search warrants themselves, and the CyberTipline Report upon which these warrants were based. The exhibits filed on CM/ECF will be redacted to eliminate personal information. Unredacted copies will be provided to the Court and counsel separately.

WHEREFORE, based upon the above showing, Byron Morales requests that this Court grant his motion to suppress all evidence obtained during and derived from (as a "fruit" of) these searches and seizures, his involuntary statements, and the non-consensual seizure and search of his cell phone.

By:    /s/Richard H. McWilliams
       222 South 15th Street, Ste. 300N
       Omaha, NE 68102
       (402) 221-7896
       Rich_mcwilliams@fd.org